## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Douglas Brooks, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06 C 5722 |
| | ) |
| MICHAEL J. ASTRUE, | ) Magistrate Judge Arlander Keys |
| Commissioner of Social | ) |
| Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Douglas Brooks applied for Disability Insurance Benefits and Supplemental Security Income on April 14, 2004, alleging disability beginning July 1, 2002. Record at 11. The Social Security Administration denied the claim initially on July 15, 2004, and again on reconsideration on December 3, 2004. *Id.* Mr. Brooks timely requested a *de novo* hearing on December 29, 2004. *Id.* The hearing was held before Administrative Law Judge John L. Mondi on March 9, 2006 in Oak Brook, Illinois. *Id.*

At the hearing, Mr. Brooks was represented by counsel. He testified that he is 42 years old, divorced, has two minor children, lives with his mother, and has a high school education. *Id.* at 148. He also testified that he worked as a Laborer for Cantel Communications from approximately August, 2001 to July, 2002. *Id.* at 149. Mr. Brooks further testified that, on July 1, 2002, he became disabled because of lower back pain. *Id.* He

testified that he did have two jobs after July 1, 2002, but he was unable to continue working at either place for more than a few days because he was in excruciating pain. *Id.* at 148-49.

When the ALJ asked Mr. Brooks about any other health problems that he should consider, Mr. Brooks testified that he has been 90% blind in his left eye for his entire life. *Id.* at 151. He also testified that he can stand in one place for only about ten minutes, can walk about eight city blocks before his back starts to hurt, can sit for only about ten minutes at one time, has difficulty climbing a flight of stairs, and frequently uses a cane. *Id.* at 152-53.

When the ALJ asked Mr. Brooks about what type of treatment he has undergone for his back pain, he testified that he is currently taking Tramadol and Tylenol for his back pain. *Id.* at 154. Mr. Brooks stated that, although he initially took two pills of Tramadol, he now only takes one pill because the medicine makes him feel dizzy and itchy. *Id.*

With regard to his daily activities, Mr. Brooks testified that his mother sometimes helps him get dressed when his back pain is severe. *Id.* at 154-55. He further indicated that he does not do any of the household chores, although he occasionally mows the lawn using a riding mower when his back does not hurt. *Id.* at 155. He testified that he spends most of his day watching

2

TV, sitting, and lying down trying to get comfortable. *Id.* at 156. He also testified that he does some limited exercises to try to alleviate some of the pain in his back. *Id.* at 157.

Mr. Brooks testified that he has not driven since 2000, when he lost his license because of a DUI. *Id.* at 155. When asked if he had a problem with alcohol, Mr. Brooks testified that he stopped drinking in March, 2005, after a 75-hour treatment program. *Id.* at 156. Mr. Brooks testified that alcohol abuse never adversely affected his employment. *Id.* He also testified that he will be able to get his driver's license back when he can afford to pay for a lawyer and another driving evaluation. *Id.*

When questioned by his own attorney, Mr. Brooks testified that he does not believe that he can perform the last job he held because his back pain limits his ability to lift more than ten pounds and limits his range of motion. *Id.* at 157-59. He also testified that the last time he walked eight city blocks was about three years ago. *Id.* at 161. He testified that he is completely abstinent from alcohol now, and that he has never been fired from a job for anything related to alcohol use. *Id.* Mr. Brooks testified that he has problems because he has use of only one eye. *Id.* at 162.

James Breen, a vocational expert, also testified at the administrative hearing. *Id.* at 167. The ALJ asked Mr. Breen to

3

consider a hypothetical individual with a vocational profile as
follows:  a younger individual with a high school education and
no transferable skills from his previous work, who is almost
completely blind in one eye and has 20/30 vision in the other
eye; who is limited to: lifting no more than twenty pounds
occasionally and ten pounds frequently; standing and/or walking
for six hours in an eight-hour workday, sitting for six hours in
an eight-hour workday; no more than occasional climbing,
balancing, stooping, kneeling, crouching and crawling; and
limited exposure to hazards.  *Id.* at 169.  The VE testified that
the hypothetical individual could not perform Mr. Brooks' past
relevant work, but that he could perform unskilled light work as
a mail clerk (6,000 jobs in Chicago); cashier (95,000 jobs in
Chicago); or cafeteria attendant (14,000 jobs in Chicago).  *Id.*
at 169-70.  Furthermore, Mr. Breen testified that, if the
hypothetical individual were limited to sedentary work, with a
sit/stand option, and the individual were not off task for more
than ten minutes every hour, he could perform unskilled,
sedentary work as a charge account clerk (5,500 jobs in Chicago);
surveillance system monitor (5,000 jobs in Chicago); and routine
office clerk, (31,000 jobs in Chicago).  *Id.* at 170.

The VE then reviewed the Physical Capacities Evaluation
completed by Mr. Brooks' treating physician, Dr. Lucietto.  *Id.*

4

at 170. The VE testified that if the hypothetical individual had the same limitations that Dr. Lucietto listed Mr. Brooks as having, he would consider that individual to be unemployable. *Id.* at 171. Particularly important to his conclusion was the hypothetical individual's need for unscheduled interruptions of work, the need to leave the work station often, and the likelihood that this individual would probably miss work because of the back pain. *Id.*

In addition to the testimony, Mr. Brooks presented the ALJ with a voluminous record documenting his work and medical history. With regard to his work history, the record shows that Mr. Brooks worked as a machinist between 1994 and 1997. *Id.* at 78. For five months in 1997, he worked as a construction laborer. *Id.* at 78. He assembled coaxial cable between February, 1998 and March, 2001. *Id.* Mr. Brooks worked as a laborer from approximately August, 2001 to July, 2002, when he injured his back. *Id.* at 75, 149. Following the injury, he worked for one month in 2003 emptying propane tanks and for a few days in 2004 performing cleaning services. *Id.* at 73-74.

The record shows that Mr. Brooks received an MRI of his lower back on May 4, 1990, showing a mid-line herniated disc. *Id.* at 99. Mr. Brooks does not claim that this injury resulted in his disability. Interestingly, there are no medical records

from the time of his alleged injury in 2002. Indeed, the record does not contain any medical evidence until February 2004, almost two years after Mr. Brooks' alleged date of injury.

On February 29, 2004, Mr. Brooks went to see Dr. Gryfinski because of his back pain. *Id.* at 102-03. Upon examination, Dr. Gryfinski reported that Mr. Brooks had a cane and walked awkwardly. *Id.* Dr. Gryfinski noted no lower back swelling, a restricted range of spine motion, pain on straight-leg raising, normal strength of his legs, no sensory deficits, and normal reflexes. *Id.* Dr. Gryfinski noted that Mr. Brooks only took Naprosyn, an anti-inflammatory medication. *Id.* at 102. He also noted that Mr. Brooks repeatedly stated that he would like to go on disability. *Id.* Dr. Gryfinski recommended that Mr. Brooks either see a physical therapist or a chiropractor and he gave him a prescription for Naprosyn. *Id.* at 103.

On June 22, 2004, Dr. Roopa K. Karri examined Mr. Brooks at the request of the state agency. *Id.* at 104-08. Mr. Brooks reported to Dr. Karri that he injured his back at work and indicated that he has had back pain since the age of 23. *Id.* at 104. He also stated that he has been blind in his left eye since he was twelve years old. *Id.* at 103. He also told the doctor that he took Naproxen, a generic version of Naprosyn, but that the medication did not provide him any pain relief. *Id.* at 104-

6

05. He told the doctor that he could stand for about 45 to 60 minutes and sit for about 30 minutes. *Id.* at 105. Upon examination, Dr. Karri reported that Mr. Brooks had 20/30 vision in his right eye, without glasses, and was unable to read but could count fingers with the left eye. *Id.* She indicated that Mr. Brooks was able to get on and off the examination table, could walk 50 feet without support, had a normal gait, without the use of an assistive device, had a restricted range of motion of the back, and had positive straight-leg raising at 50 degrees. *Id.* at 106. Dr. Karri further noted normal reflexes and no sensory deficits. *Id.* An x-ray of Mr. Brooks' lower back showed advanced osteoarthritic changes. *Id.* at 106, 108. Dr. Karri diagnosed Mr. Brooks with a history of low back pain, two ruptured discs, advanced osteoarthritis, and left eye blindness. *Id.* at 106-07.

On September 13, 2004, Mr. Brooks sought treatment for his back pain from Dr. Therese Lucietto, a primary care physician. *Id.* at 123. Dr. Lucietto examined Mr. Brooks and indicated that he had no swelling or tenderness and had normal reflexes. *Id.* At this time, Mr. Brooks requested an MRI. *Id.* The MRI, taken on September 23, 2004, showed a broad-based disc bulge with a partial annular tear and a small central disc protrusion. *Id.* at 124-25. X-rays of the lower back showed minimal degenerative

disc changes. *Id.* at 126.

On October 18, 2004, Mr. Brooks saw Dr. Lucietto for a
follow-up visit. *Id.* at 122. Mr. Brooks told Dr. Lucietto that
he took only Naprosyn for his back pain, but that the medication
did not provide any pain relief. *Id.* Upon examination, Dr.
Lucietto reported normal reflexes and no swelling. *Id.* She
prescribed Tramadol, a non-narcotic pain reliever, and discussed
other treatment options, such as epidural injections and surgery.
*Id.* at 119, 120-22. A few days later, Mr. Brooks called Dr.
Lucietto complaining of itchiness, light headedness, and
dizziness that began when he started taking the recently
prescribed medication. *Id.* at 119. Dr. Lucietto instructed him
to stop taking the Tramadol, but to continue taking the other
medications, Bextra, Tylenol, Neurontin, and Vicoden. *Id.*

On January 4, 2005, Mr. Brooks went to see Dr. J. Thomas
Brown, a neurologist, because he was complaining of low back
pain. *Id.* at 128. Mr. Brooks told Dr. Brown that his medication
provided some pain relief. *Id.* He also told Dr. Brown that he
does not drive. *Id.* Upon examination, Dr. Brown reported that
Mr. Brooks had a non-antalgic gait, had a restricted range of
motion of his back, had some muscle tenderness, normal strength,
no sensory deficits, normal reflexes, and negative straight-leg
raising. *Id.* Dr. Brown diagnosed Mr. Brooks with chronic,

variable mechanical low back pain. *Id*. Dr. Brown reviewed the September 2004 MRI and noted no significant abnormalities. *Id*. at 128-29. Dr. Brown told Mr. Brooks that he would not recommend surgery on his low back; rather Dr. Brown recommended that Mr. Brooks continue with his back exercise program and medication regimen and consider epidural steroid injections. *Id*. at 129.

On November 17, 2004, Mr. Brooks again saw Dr. Lucietto for back pain. *Id*. at 136. Upon examination, Dr. Lucietto reported normal reflexes and recommended that Mr. Brooks continue taking his medication and schedule a follow-up visit in a month. *Id*. at 137. On December 17, 2004, Mr. Brooks returned to Dr. Lucietto's office. *Id*. at 138. Dr. Lucietto noted that Mr. Brooks felt better and that he reported no new complaints. *Id*.

On February 24, 2006, Dr. Lucietto completed a function assessment form. *Id*. at 130-33. She opined that Mr. Brooks could not sit or stand for more than ten minutes at a time, and that he was unable to sit, stand, or walk for at least one hour in an eight-hour workday because of his back pain. *Id*. at 130. Dr. Lucietto further opined that Mr. Brooks could lift twenty pounds occasionally and ten pounds frequently and he could carry twenty pounds occasionally and ten pounds continuously. *Id*. She indicated that Mr. Brooks is limited in his ability to push, pull, and use his feet for repetitive movements, and that he

9

could not perform various postural movements or work in conditions with unprotected heights or moving machinery. *Id.* at 131-32. Dr. Lucietto cited Mr. Brooks' x-rays and MRI results, his spinal tenderness, and limited range of spinal motion, as objective evidence to support Mr. Brooks' complaints of pain. *Id.* at 132. She indicated that Mr. Brooks would need unscheduled interruptions of his work routine every ten minutes and would miss work frequently because of his symptoms. *Id.* at 133.

On July 8, 2004, Dr. Boyd McCracken, a state agency physician, reviewed the record and concluded that Mr. Brooks could lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and engage in unlimited pushing or pulling. *Id.* at 109-16. He further indicated that Mr. Brooks could perform occasional climbing, balancing, stooping, kneeling, crouching, and crawling. *Id.* at 111. Dr. McCracken indicated that Mr. Brooks is limited in his ability to perform various visual activities because he is blind in the left eye and has 20/30 vision in the right eye. *Id.* at 112. Dr. McCracken further noted that Mr. Brooks should avoid concentrated exposure to hazards, working with machinery, and working at unprotected heights. *Id.* at 113. Dr. McCracken noted that he based his findings on Dr. Karri's examination. *Id.* at

116. On November 1, 2004, Dr. Ernst Bone, a state agency physician, reviewed the record and concurred with Dr. McCracken's opinion. *Id.* at 127.

In an April 21, 2006, decision, the ALJ denied Mr. Brooks' claim for benefits. Specifically, he found that, although Mr. Brooks had severe impairments, his impairments did not meet or medically equal any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* at 14. The ALJ found that Mr. Brooks could perform work that required him to lift up to twenty pounds occasionally and ten pounds frequently; stand and/or walk for a total of six hours in an eight-hour workday; no more than occasionally climb, balance, crawl, crouch, and stoop; and no concentrated exposure to hazards. *Id.* The ALJ further found that Mr. Brooks had other limitations because of his left eye blindness. *Id.* In concluding that Mr. Brooks was not disabled, the ALJ relied on the vocational expert's testimony that Mr. Brooks could perform a significant number of jobs in the national economy based on his vocational profile. *Id.* at 16-17.

The Appeals Council denied Mr. Brooks' request for review on August 20, 2006, thereby making the ALJ's decision the final decision of the Social Security Commissioner. *Id.* at 4-7. Mr. Brooks then filed this civil action for judicial review of the Commissioner's final decision. The parties consented to proceed

before a magistrate judge, and the case was assigned to this
Court on April 3, 2007. The parties have filed cross-motions for
summary judgment which are now fully briefed.

## DISCUSSION

Disability Insurance Benefits are available only to
claimants who can establish "disability" under the terms of the
Social Security Act. The Social Security regulations provide a
five-step sequential analysis for determining disability for
purposes of eligibility for benefits. Under the regulations, the
ALJ is required to evaluate, in sequence, (1) whether the
claimant is currently employed; (2) whether the claimant has a
severe impairment; (3) whether the claimant's impairment meets or
equals one of the impairments listed by the Commissioner in 20
C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant
can perform his past work; and (5) whether the claimant is
capable of performing working in the national economy. *Clifford
v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citing *Knight v.
Chater*, 55 F.3d 309, 313 (7th Cir. 1995). For steps one through
four, the claimant bears the burden of proof; at step five, the
burden shifts to the Commissioner. *Id.* (citing *Knight*, 55 F.3d
at 313).

A district court reviewing an ALJ's decision under this
analysis must affirm the decision if substantial evidence

12

supports the decision and the decision is free of legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Where, however, "the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940. In the Seventh Circuit, an ALJ must "build an accurate and logical bridge from the evidence to [his] conclusions so that [the Court] may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). It is not enough that the record contains evidence to support the ALJ's decision; if the ALJ does not rationally articulate the grounds for his decision, the Court must remand. *Steele*, 290 F.3d at 941.

Applying the five-step analysis, ALJ Mondi first determined that Mr. Brooks has not engaged in substantial gainful activity since July 1, 2002, his alleged onset date of disability. Record at 14. Although Mr. Brooks did work after the alleged onset date, the ALJ found that, because the duration of employment was short, the work was not substantial gainful activity. *Id.* Further, the ALJ found that Mr. Brooks did have severe impairments, namely a back disorder and a history of alcoholism in remission. *Id.* But the ALJ found that his impairments did not meet or medically equal a listed impairment. *Id.* As a

13

predicate to his findings at steps four and five, the ALJ determined that Mr. Brooks could perform light and sedentary work subject to a restriction against more than occasional climbing, balancing, crawling, crouching and stooping, a need to avoid concentrated exposure to hazards and limitations from left eye blindness and 20/30 right eye vision. *Id.* at 14-15. Based on that finding, the ALJ determined that Mr. Brooks was incapable of performing his past relevant work as a line installer or laborer. *Id.* at 15. However, the ALJ concluded that, given his age, education, work experience, and residual functional capacity, Mr. Brooks could still perform a significant number of light, unskilled jobs in the national economy and was, therefore, not disabled and not entitled to benefits. *Id.* at 16-17.

Mr. Brooks argues that this Court must reverse or remand the ALJ's decision for essentially three reasons: (1) the ALJ's step two determination is incomplete because he did not find all of Mr. Brooks' impairments "severe" and inaccurate because he found a history of alcoholism; (2) the ALJ's step three determination is incorrect because he failed to find that the impairment found at step two meets or is medically equivalent to a listed impairment; and (3) the ALJ's step five determination is incorrect because it improperly relied on some evidence in the record and failed to reflect other evidence in the record. The

14

Court considers each argument in turn.

Mr. Brooks first argues that the ALJ's step two finding is incomplete and inaccurate; he argues that the finding is incomplete because the ALJ found that only his back disorder was a severe impairment, and he argues that it is inaccurate because the ALJ found that Mr. Brooks suffered from a history of alcoholism, which was false.

Mr. Brooks argues that the ALJ did not list as severe impairments his osteoarthritic changes, lower back pain, atherosclerotic changes in the infrarenal abdominal aorta area, or left eye blindness, making the step two determination incomplete. As an initial matter, the Court notes that the ALJ did include some of these issues – the osteoarthritic changes, lower back pain, and atherosclerotic changes – in his step two determination. These would seem to be related to Mr. Brooks' back disorder, which the ALJ determined to be severe. The ALJ does not appear to have considered Mr. Brooks' blindness at step two. And, to be sure, once an ALJ determines that one of the claimant's ailments or conditions is severe, he must consider the aggregate effect of all of his ailments, including those ailments that in isolation may not be severe. 20 C.F.R. §404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). If the ALJ finds a medically severe combination of impairments, he

15

must consider the combined effect of the impairments throughout the analysis. 20 C.F.R. §404.1523. Thus, having found that Mr. Brooks does have a severe impairment, the ALJ was required to consider all of his impairments, including his left eye blindness, in the remaining steps of the analysis. He did so. Although the ALJ did not specifically mention Mr. Brooks' left eye blindness in step two, he did consider the effect of this impairment at steps four and five. Record at 14. Accordingly, the Court cannot agree that the ALJ's finding in this regard was incomplete.

Mr. Brooks further argues that the step two finding is inaccurate because the ALJ found that Mr. Brooks suffered from a history of alcoholism, which was in remission. Mr. Brooks argues that the record does not support that conclusion. There really is not much in the record regarding alcoholism or alcohol abuse. References to alcohol in the record are limited to Mr. Brooks' own statements about why he lost his driver's license in 2000, his participation in a 75-hour treatment program in March 2005, and his explicit statement that alcohol abuse never adversely affected his employment. Record at 155-56. The record shows that Mr. Brooks told his doctor in 2005 that he did not drive, but he did not mention alcohol; he said only that this limitation had nothing to be with his back. *Id.* at 128. Based on the

16

evidence in the record, the ALJ could logically have concluded that Mr. Brooks had a *history* of alcoholism, which is now in remission.[1]

Mr. Brooks next challenges the ALJ's step three determination that his impairment did not meet or equal an impairment listed by the Commissioner in 20 C.F.R. Pt. 404, Subpt. P, App. 1. In particular, Mr. Brooks argues that the ALJ failed to cite to a particular listing, did not properly consider the evidence presented, and failed to offer an explanation for his finding. Mr. Brooks argues that the ALJ's step three determination is incorrect because the ALJ did not explicitly cite to a relevant listing in the Appendix. But Mr. Brooks misconstrues the ALJ's duty. In the Seventh Circuit, an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a "perfunctory analysis," may require a remand. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). However, the ALJ is not required to explicitly cite

---

[1] The Court rejects the notion, urged by Mr. Brooks, that the discussion of alcoholism reflects the ALJ's bias against him. The mere fact that a claimant may have a substance abuse issue would hardly shock or offend an ALJ; ALJs are asked to consider such impairments all the time – indeed, the social security regulations make specific accommodations for these impairments. And, here, there was enough in the record to warrant some discussion of the issue. Mr. Brooks does not argue that, having noted it, the ALJ should have actually considered the impairment, including the effects it may have on his ability to work. On the contrary, Mr. Brooks himself would take issue with any implication that his past history of alcoholism would have impacted his ability to work.

17

to a relevant listing in the Appendix to avoid a reversal or remand. *See Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004). Given the demands on governmental resources and the ALJs, it would be unwise to remand a decision simply because the ALJ failed to cite to a specific listing.

Mr. Brooks further argues that the evidence in the record suggests that he might meet the criteria of §1.04 of the Listed Impairments and that the ALJ is required to consider the record in its entirety to determine if all the criteria are met.[2] At this stage of the analysis, Mr. Brooks has the burden to support his disability claim based on a listed impairment, and he must present evidence that his condition satisfies all of the requirements of the listing. *Sullivan v. Zebley*, 493 U.S. 521,

---

[2]Listing 1.04 provides: Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord with (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or (B) spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or © lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

525 (1990). An impairment that manifests only some of the criteria, no matter how severe, does not qualify. *Id.* The record does not provide all the necessary findings to meet the requirements of Listing §1.04; nor does Mr. Brooks explain how any of the presented evidence meets or equals Listing §1.04. The Court cannot say, therefore, that the ALJ was unreasonable in concluding that Mr. Brooks' impairments did not meet or medically equal a listed impairment.

Mr. Brooks next argues that the ALJ did not properly consider all of the evidence presented. The ALJ indicated that he relied on the opinions of the state agency reviewing physicians that Mr. Brooks' impairments did not meet or medically equal a listing. Record at 15. The ALJ may properly rely on the opinions of these medical experts if his decision considers all the evidence in the record. *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004). The only evidence in the record that is contradictory to the state agency reviewing physicians' opinions is Dr. Lucietto's Physical Capacities Evaluation. Record at 130-33. The ALJ did consider this contradictory evidence and explained in his decision that he was giving this evidence reduced weight because he found that her opinion was inconsistent with other substantial evidence, including Mr. Brooks' recent treatment regimen and his physical activities. *Id.* at 15.

19

Therefore, the ALJ has fulfilled his duty of evaluating all the evidence that potentially supported Mr. Brooks' claim.
In short, the ALJ's step three determination was proper. The Court finds no error in the ALJ's failure to cite to a listed impairment in his decision, especially because he did consider all the presented evidence and offered an explanation as to why he was considering certain evidence and not considering other evidence in the record in determining that Mr. Brooks did not meet a listed impairment.

Mr. Brooks next argues that the ALJ's Residual Functional Capacity determination in step five is incorrect because he relied on the opinions of the state agency physicians, because he gave Dr. Lucietto's opinion reduced weight, and because he failed to consider Mr. Brooks' allegations of long-standing chronic pain in his analysis. The state agency physicians considered the entire record at the time they rendered their opinions. Record at 116, 127. The ALJ adopted these opinions because he found that they were consistent with the overall medical and other evidence, including Mr. Brooks' treatment regimen and his physical activities. *Id.* at 15. Mr. Brooks argues that reliance on these opinions was improper because they did not take into consideration the Physical Capabilities Evaluation that Dr. Lucietto conducted two years after the state agency physicians

conducted their analysis. However, the ALJ did consider this later evaluation and he stated that he gave Dr. Lucietto's opinion reduced weight because he found that her opinion was inconsistent with other substantial evidence in the record. If the ALJ concludes that a treating physician's evidence is not credible, he is not required to give it controlling weight. *Whitney v. Schweiker*, 695 F.2d 784, 788-89 (7th Cir. 1982). Therefore, the ALJ properly relied on the state agency physicians' opinions. *Rice*, 384 F.3d at 370; *see* 20 C.F.R. § 404.1527(f)(2)(I).

Mr. Brooks further argues that the ALJ's step five determination is incorrect because the ALJ failed to consider Mr. Brooks' allegations concerning his pain and failed to consider whether and to what extent his pain would affect his ability to maintain substantial gainful activity. At the hearing, Mr. Brooks testified that, since the onset of his disability, he has been unable to sustain work because of his back pain, which is so excruciating that he spends most of the day alternating between lying down and sitting, trying to get comfortable. The ALJ had the vocational expert review the physical capacities evaluation form prepared by Dr. Lucietto in which she opined, among other things, that Mr. Brooks would probably miss work due to exacerbations of pain. The ALJ also had the vocational expert

comment on Mr. Brooks' testimony regarding the extent of his pain
and the limitations caused by the pain. Not surprisingly, the
vocational expert testified that such an individual would be
unemployed. The ALJ then asked the vocational expert whether, if
the ALJ fully credited Mr. Brooks' testimony, accepting the
testimony as an accurate depiction of a hypothetical person's
capabilities and limitations, such an individual would be able to
engage in substantial gainful activities. Noting in particular
Mr. Brooks' testimony regarding not being able to stand for more
than ten minutes, sit for more than ten minutes and the need to
alternate between sitting and lying down throughout the day, the
vocational expert--again not surprisingly--testified that such an
individual would be unemployable. Record at 171-172. Obviously,
the ALJ did not fully credit the testimony of Mr. Brooks in this
regard, but he did not explicate his reasons for not doing so.
Indeed, he did not even discuss Mr. Brooks' testimony, much less
discuss whether or why he disbelieved him. The extent of the
ALJ's findings regarding Mr. Brooks' testimony about his pain and
limitations were as follows:

> Claimant's testimony of pain, other symptoms and
> functional limitations, when compared against the
> objective evidence and evaluated using factors in SSR
> 96-7p, was not credible in establishing limitations of
> a disabling severity in view of, especially, the
> objective findings in the documentary records along
> with the disproportionate use of medication, pursuit of

22

> treatment, and claimant's activities that include
> moving [sic] grass ....

The Court recognizes that valid reasons may exist to doubt Mr. Brooks' testimony about his pain and functional limitations. However, it is the obligation of the ALJ, not this Court, to point to the specific evidence that undermines his testimony. He did not do so. In fact, as the Court has already noted, the ALJ did not address the issue of Mr. Brooks' credibility at all. Because of this failure, the Court must remand the case for further proceedings. In this regard, the Court emphasizes that, other than the ALJ's failure to make specific findings regarding Mr. Brooks' testimony about his pain and functional limitations, and why he rejected it, the Court can find no fault with his analysis. Upon remand, the ALJ may, but is not required to, hold another hearing in this matter.

## CONCLUSION

For the reasons set forth above, the Court finds that the ALJ failed to build an accurate and logical bridge between the record evidence and his ultimate conclusion that Mr. Brooks is not disabled and thereby not entitled to benefits. In particular, he failed to articulate if and why he did not find Mr. Brooks' testimony regarding his pain and limitations

credible. Accordingly, the Court grants Mr. Brooks' Motion for
Summary Judgment and denies the Commissioner's Motion for Summary
Judgment. The matter is remanded for further proceedings
consistent with this opinion.

Dated: December 21, 2007

                    E N T E R E D:

                    _Arlander Keys_
                    MAGISTRATE JUDGE ARLANDER KEYS
                    UNITED STATES DISTRICT COURT

24